United States Department of Justice
Office of the United States Trustee
300 Plaza Tower
110 N. College
Tyler, Texas 75702
(903) 590-1450

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In Re | § § § | |
| Joyce Lindauer | § | Misc. Proceeding No. xx-xxxxx |
| Joyce Lindauer Attorney, PLLC | § | |
| 1412 Main Street, Suite 500 | § | |
| Dallas, Texas 75202 | § § § | |

**U.S. TRUSTEE'S MOTION FOR ORDER TO SHOW CAUSE
WHY SANCTIONS SHOULD NOT ISSUE AS TO
JOYCE LINDAUER ATTORNEY, PLLC**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee ("U.S. Trustee") files in the above-numbered miscellaneous proceeding this Motion for Order to Show Cause Why Sanctions Should Not Issue as to Joyce Lindauer Attorney, PLLC ("Firm"), and respectfully requests that the Court issue an order directing counsel Joyce Lindauer to appear and show cause why the Firm should not be sanctioned in connection with its practice before this Court. In support, the U.S. Trustee would show the Court as follows:

**I.      Summary of Issues Presented**

1.      In late 2018, Richard and Gloria Thomas ("Clients") engaged the Firm to represent them in their efforts to foreclose their security interest in 2315 Lawrence Street, Dallas, Texas, 75215 ("Property") against the Property owner, Kolobotos Properties, LLC ("Kolobotos

Properties"). Over the subsequent two-year period, the Clients paid the Firm over $4,000 for efforts to foreclose on the Property.

2. In late 2020, Kolobotos Properties engaged the Firm to represent it in its chapter 11 case ("Case") filed, in part, to stay foreclosure actions against various of Kolobotos Properties' rental houses, including the Clients' Property. The Firm assisted Kolobotos Properties in filing its Case, including preparing and filing various papers such as the schedules and statement of financial affairs. The Firm was employed in the Case pursuant to section 327(a), supported by an application and related sworn disclosures of disinterestedness.

3. Shortly before the creditor meeting in the Case, the Firm apparently recognized it was engaged simultaneously by the Clients, secured creditors in the Case, and by Kolobotos Properties, the debtor in the Case. Mr. Greg Mitchell, not affiliated with the Firm, appeared at the creditor meeting along with a lawyer for the Firm to announce that Mr. Mitchell would undertake future representation of Kolobotos Properties in the Case due to an unspecified conflict by the Firm. The Firm ceased further activity in Case. The Firm did not supplement its employment disclosures or seek formal withdrawal in the Case and was still employed when the Case was ultimately dismissed. On information and belief, the Firm did not formally terminate its representation of the Clients, but instead ceased communication with Clients, though Ms. Lindauer informally disputes this allegation contending she informed the Clients. On information and belief, the Clients discovered the Case through noticing and ultimately retained Ms. Susan Hersh to represent their interests.

4. The U.S. Trustee respectfully seeks an order to show cause why the Firm should not be sanctioned for its apparently inadequate conflicts analyses; its failure to supplement sworn

disclosures in the Case; and any failure to adequately represent or inform its original Clients of the conflict.

## II.    Jurisdiction

5.  This Court has jurisdiction over this matter pursuant to 11 U.S.C. § 105, 28 U.S.C. § 1334, and the standing order of reference.

## III.    Standing and Role of the U.S. Trustee

6.  28 U.S.C. § 586(a)(3) provides, in pertinent part:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall . . .

> (3) supervise the administration of cases and trustees in cases under chapter 7, 11,12, 13 or 15 of title 11 by, whenever the United States trustee considers it to be appropriate . . .
>
> (D) taking such action as the United States trustee deems appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed; . . .

11 U.S.C. § 586(a)(3)(D) and (G).

7.  In addition, the U.S. Trustee was intended by Congress to be "watchdogs . . . prevent(ing) fraud, dishonesty and overreaching in the bankruptcy arena." H.Rep. No. 989, 95th Cong., 2nd Sess. 88 *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6049.  The U.S. Trustee also serves to "fill the vacuum of lack of creditor participation." *Id*. at 100.  U.S. Code Cong. & Ad. News at 6061.  As the administrative officer of the bankruptcy system, the U.S. Trustee has ". . . an independent obligation to execute and enforce the bankruptcy laws." *Id*. at 110. U.S. Code Cong. & Ad. News at 6072.  Finally, the U.S. Trustee has been given a broad grant of authority to participate in almost every matter which might arise in a case under title 11. Specifically, 11 U.S.C. § 307 provides as follows:

The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title, but may not file a plan pursuant to section 1121(c) of this title.

### IV. Specific Factual Allegations

*Firm's Representation of Richard and Gloria Thomas*

8.   In late 2018, the Clients retained the Firm to represent them to foreclose their security interest in the Property against Kolobotos Properties, who had executed a note and deed of trust in favor of Clients for the Property.

9.   On November 13, 2018, the Firm sent a demand letter ("First Demand Letter") on behalf of the Clients to the Debtor.  A copy of the First Demand Letter is attached as Exhibit 1.  On October 12, 2020, the Firm sent a more recent demand letter ("Recent Demand Letter") on behalf of the Clients to the Debtor.  A copy of the Recent Demand Letter is attached as Exhibit 2.

10.   During the Firm's representation of the Clients in 2018 and 2019, the Clients tendered payment to the Firm for such services an amount not less than $4,593.  A copy of check images from 2018 and 2019 is attached as Exhibit 3.

11.   The Firm continued to represent and perform services for the Clients to foreclose their interest in the Lawrence Street Property as late as November 25, 2020, evidenced by an invoice to Client dated December 22, 2020 ("December Invoice").  A copy of the December Invoice is attached as Exhibit 4.

12.   Significantly, the December Invoice includes billings for services rendered on behalf of Clients in connection with the Property from November 10 through November 23, 2020, all of which occurred post-petition in the Case.

*Firm's Representation of Kolobotos Properties*

13.   On November 2, 2020, the Firm assisted Kolobotos Properties to file chapter 11 case number 20-42234, the Case.

14. On November 23, 2020, the Firm sought employment under Bankruptcy Code section 327(a) to represent Kolobotos Properties by filing the Debtor's Application to Employ Counsel ("Employment Application"). The Employment Application includes a supporting affidavit signed by Ms. Lindauer ("Lindauer Affidavit"). The Employment Application with the Lindauer Affidavit is attached as Exhibit 5.

15. The Employment Application states, in part, that "[Kolobotos Properties] desires to hire [Firm] as counsel in this matter effective as of November 2, 2020." Employment Application at ¶ 2. The Lindauer Affidavit states, in part, that "[n]either I, Joyce Lindauer, PLLC, nor any partner, counsel, associate or contract attorney thereof, insofar as I have been able to ascertain, have any connection with the Debtor or its creditors, . . ." Lindauer Affidavit at ¶ 5.

16. Also, on November 23, 2020, Kolobotos Properties filed its schedules ("Schedules") in the Case. Presumably, the Firm assisted Kolobotos Properties with preparation of the Schedules. The Schedules listed as a real property asset of Kolobotos Properties the Property and listed the Clients as the creditors secured by the Property.

17. On December 4, 2020, Mr. Greg Mitchell sought employment to represent Kolobotos Properties under Bankruptcy Code section 327(a).

18. Also, on December 4, 2020, the U.S. Trustee conducted the first meeting of creditors in the Case. Ms. Kerry S. Alleyne of the Firm and Mr. Greg Mitchell appeared at the meeting to represent Kolobotos Properties.

19. On December 21, 2020, the Court entered an order approving employment of the "[Firm], Joyce W. Lindauer, Kerry S. Alleyne and Guy H. Holman . . . as counsel of record for [Kolobotos Properties] in accordance with the terms of the Application effective as of November

2, 2020 . . .." On January 4, 2021, the Court approved the employment of Mr. Mitchell as counsel.

20. The docket for the Case does not reflect any form of supplemental employment-related disclosure by the Firm or any form of motion seeking withdrawal or substitution of counsel filed by the Firm.

21. On information and belief, the Firm ceased communication with the Clients during the pendency of the Case and did not seek to collect payment for the December Invoice.

## V. Legal Standards

*Local Bankruptcy and District Court Rules*

22. Local Bankruptcy Court Rule 1001-1(c)(1) provides, in pertinent part, as follows:

> The District Court Rules governing attorney admission, suspension, and disbarment apply in the Bankruptcy Court . . . when an attorney appears in Bankruptcy Court.

23. Local District Court Rules, Section III, Rules AT-1 through AT-3 address attorney admission, attorney discipline, and standards of practice to be observed by attorneys.

24. More specifically, Local District Court Rule AT-2 Attorney Discipline (a) and (d) provides, in pertinent part, as follows:

> (a) **Generally.** The standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court. It is recognized, however, that no set of rules may be framed which will particularize all the duties of the attorney . . . [t]herefore, the attorney practicing in this court should be familiar with the duties and obligations imposed upon members of this bar by the Texas Disciplinary Rules of Professional Conduct, court decisions, statutes, and the usages customs and practices of this bar.
>
> (d) **Disciplinary Action Initiated in This Court.**
>
> > (1) **Grounds for Disciplinary Action.** This court may, after an attorney has been given an opportunity to show cause to the contrary, take any appropriate disciplinary action against any attorney: . . .

    (A) for conduct unbecoming a member of the bar;

    (B) for failure to comply with these local rules or any other rule or order of this court;

    (C) for unethical behavior; . . ..

25.    Local District Court Rule AT-3 Standards of Practice to be Observed by Attorneys provides, in pertinent part, as follows:

    Attorneys who appear . . . in this court shall comply with the following standards of practice . . .[1]

    (A)    In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.

    (B)    A lawyer owes, to the judiciary, candor, diligence and utmost respect.

    (C)    A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of our system of justice and the respect of the public it serves.

    (D)    A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

    (E)    Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times. . .

26.    The District Court Rules regarding attorney admission, discipline and standards of practice required of attorneys, incorporated by Local Bankruptcy Rule 1001-1, set forth particular standards required of attorneys who appear before the Court. Local District Rule AT-3 defines specific standards of practice based on the Northern District of Texas decision in *Dondi Properties Corp. v. Commerce Savings and Loan Association*, 121 F.R.D. 284, 287 (N.D. Tex.

---

[1] The standards enumerated here are set forth in the *en banc* opinion in *Dondi Properties Corp. v. Commerce Savings and Loan Association*, 121 F.R.D. 284, 287 (N.D. Tex. 1988).

1988). Local District Court Rule AT-2 provides guidance for attorney conduct that includes the Texas Disciplinary Rules of Professional Conduct ("Texas Rules").

*Texas Disciplinary Rules of Professional Conduct*

27. The Texas Rules, Rule 1.06, provides as follows:

**Rule 1.06. Conflict of Interest: General Rule**

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

> (1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or
>
> (2) reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

> (1) the lawyer reasonably believes the representation of each client will not be materially affected; and
>
> (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute.

(e) If a lawyer has accepted representation in violation of this Rule, or if multiple representation properly accepted becomes improper under this Rule, the lawyer shall promptly withdraw from one or more representations to the extent necessary for any remaining representation not to be in violation of these Rules.

(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other lawyer while a member or associated with that lawyer's firm may engage in that conduct.

28.     The Official Comments to Rule 1.06 related to conflicts of interest provide, in pertinent part, as follows:

**Loyalty to a Client**

1. Loyalty is an essential element in the lawyer's relationship to a client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer must take effective action to eliminate the conflict, including withdrawal if necessary to rectify the situation.

2. A fundamental principle recognized by paragraph (a) is that a lawyer may not represent opposing parties in litigation. The term "opposing parties" as used in this Rule contemplates a situation where a judgment favorable to one of the parties will directly impact unfavorably upon the other party. Moreover, as a general proposition loyalty to a client prohibits undertaking representation directly adverse to the representation of that client in a substantially related matter unless that client's fully informed consent is obtained and unless the lawyer reasonably believes that the lawyer's representation will be reasonably protective of that client's interests. Paragraphs (b) and (c) express that general concept.

**Meaning of Directly Adverse**

6. Within the meaning of Rule 1.06(b), the representation of one client is "directly adverse" to the representation of another client if the lawyer's independent judgment on behalf of a client or the lawyer's ability or willingness to consider, recommend or carry out a course of action will be or is reasonably likely to be adversely affected by the lawyer's representation of, or responsibilities to, the other client. The dual representation also is directly adverse if the lawyer reasonably appears to be called upon to espouse adverse positions in the same matter or a related matter. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not constitute the representation of directly adverse interests. Even when neither paragraph (a) nor (b) is applicable, a lawyer should realize that a business rivalry or personal differences between two clients or potential clients may be so important to one or both that one or the other would consider it contrary to its interests to have the same lawyer as its rival even in unrelated matters; and in those situations a wise lawyer would forego the dual representation.

**Full Disclosure and Informed Consent**

7. A client under some circumstances may consent to representation notwithstanding a conflict or potential conflict. However, as indicated in paragraph (c)(1), when a disinterested lawyer would conclude that the client

should not agree to the representation under the circumstances, the lawyer involved should not ask for such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the full disclosure necessary to obtain informed consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.

8. Disclosure and consent are not formalities. Disclosure sufficient for sophisticated clients may not be sufficient to permit less sophisticated clients to provide fully informed consent. While it is not required that the disclosure and consent be in writing, it would be prudent for the lawyer to provide potential dual clients with at least a written summary of the considerations disclosed.

**Rule 1.15. Declining or Terminating Representation**

The Texas Rules, Rule 1.15, (a) and (d) provide as follows:

(a) A lawyer shall decline to represent a client or, where representation has commenced, shall withdraw, except as stated in paragraph (c), from the representation of a client, if:

(1)   the representation will result in violation of Rule 3.08, other applicable rules of professional conduct or other law;

(2)   the lawyer's physical, mental or psychological condition materially impairs the lawyer's fitness to represent the client; or

(3)   the lawyer is discharged, with or without good cause.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.

29.    The U.S. Trustee contends that the Local District Court Rules, Section III, Rules AT-1 through AT-3 addressing attorney admission, attorney discipline and the standards of practice to be observed by attorneys are incorporated by Local Bankruptcy Rule 1001 and

thereby provide both the minimal standards by which attorneys appearing before the Court must conduct themselves and the means and mechanism for the Court to discipline those who fail to meet such standards.

*Court's Inherent Authority*

30. This Court also has inherent authority to discipline attorneys who practice before it. *In re Johnson*, 921 F.2d 585, 587 (5th Cir. 1991); *In re Placid Oil Co.*, 158 B.R. 404, 411-12 (N.D. Tex. 1993). In *Crowe v. Smith*, 151 F.3d 217 (5th Cir. 1998), *cert. denied,* 119 S. Ct. 2047 (1999), the Fifth Circuit held that disbarment, suspension, and reprimand proceedings were quasi-criminal in nature, that the burden was "clear and convincing" evidence rather than "beyond a reasonable doubt," and that disbarment did not require a separate prosecutor. *Crowe*, 151 F.3d at 233.

31. In *Crowe*, the Fifth Circuit affirmed the federal district court's suspension orders because the district court issued an order to show cause, the parties produced evidence based on independent theories, and the court relied on its own research. The attorney who brought the misconduct to the court's attention provided a factual statement; but he did not argue, submit briefing after trial, or advocate a particular sanction. This attorney was allowed to gather evidence and cross-examine witnesses, and the Fifth Circuit specifically noted in another portion of the opinion that the court's research may be "supplemented by appropriate briefing by the parties." *Crowe*, 151 F.3d at 233. "[B]y avoiding putting opposing counsel in the position of making legal argument in favor of disbarment, the court sufficiently avoids placing him in the role of prosecutor." *Crowe*, 151 F.3d at 233.

32. The U.S. Trustee contends that the Firm has not conformed to the standards of practice required by this Court. Under the guidance of the Local Bankruptcy Court Rules, the

District Court Rules and under controlling precedent defining the Court's inherent authority to govern the attorneys appearing before it, the U.S. Trustee believes that the correct procedure for him to follow is to request the Court to issue an order to show cause why the Firm should not be sanctioned. The U.S. Trustee would participate in any show cause hearing ordered by the Court.

33. According to the district court in *Dondi*, discipline may include "a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances." *Dondi Properties Corp.*, 121 F.R.D. at 288 (citing *Thomas v. Capital Security Services*, 837 F.2d. 866 (5th Cir. 1988)). Discipline is not designed solely to punish. It also protects the courts and the public from harm. *Crowe*, 151 F.3d at 229. It "implicates an independent and fundamental duty of the district court – the supervision of the attorneys who practice as members of its bar – in ways that other sanctions simply cannot." *Crowe,* 151 F.3d at 230.

34. The foregoing constitutes cause for the Court to issue an order to show cause why the Firm should not be sanctioned before this Court. In the alternative, cause exists for the Court to impose lesser penalties, such as a period of probation or mandatory education.

WHEREFORE PREMISES CONSIDERED the U.S. Trustee requests that this Court issue its Order to Show Cause requiring the Firm after due notice and opportunity to prepare, to appear and demonstrate why the Firm should not be sanctioned by the United States Bankruptcy Court for the Eastern District of Texas. The U.S. Trustee also requests such other relief as may be just.

| | |
|---|---|
| Dated: June 9, 2021 | Respectfully submitted, |
| | William T. Neary<br>United States Trustee |
| | /s/ Marcus F. Salitore<br>Marcus F. Salitore<br>Trial Attorney<br>Texas Bar 24029822<br>300 Plaza Tower<br>110 N. College<br>Tyler, Texas   75702<br>(903) 590-1450 Ext. 216 |

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing document was served on the following listed persons through the court's electronic notification system as permitted by Appendix 5005 to the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas, or by first class United States Mail, postage prepaid, no later than June 10, 2021.

/s/ Marcus F. Salitore

**FIRM:**
Joyce W. Lindauer, PLLC
Joyce Lindauer, Attorney
1412 Main Street
Suite 500
Dallas, TX 75202

**CLIENTS:**
SUSAN B. HERSH, P.C.
12770 Coit Road, Suite 1100
Dallas, Texas 75251